# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

**HERBERT O. CASE, JR.**                          **CIVIL ACTION**

**VERSUS**                                               **NO.: 08-668**

**MICHAEL J. ASTRUE, COMMISSIONER**        **SECTION "S" (3)**
**SOCIAL SECURITY ADMINISTRATION**

## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his applications for disability insurance benefits under Title II and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). The sole issue presented on appeal is whether the ALJ properly weighed the opinion of plaintiff's treating psychiatrist, Dr. Barry Amyx. The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that the plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED and plaintiff's case be DISMISSED WITH PREJUDICE.

## I. BACKGROUND

At the time of the hearing, Plaintiff was a forty-seven (47) year-old individual.[1] His case is premised upon mental conditions,[2] to wit: (1) Schizophrenia-paranoid type with a history of

---

[1]*See* Transcript of the July 18, 2006 conducted by ALJ Glay E. Maggard [Adm. Rec. 216].

[2]*See* Disability Report - Adult - Form SSA 3368 [Adm. Rec. 87].

auditory hallucinations; (2) Personality Disorder -NOS; and (3) a history of alcohol abuse.[3] He

also claims that his medications cause him to sleep during the day.[4] The record indicates that he

has a ninth (9th) grade education (classified as limited) with prior work experience as a forklift

operator, shipyard laborer and tool sharpener.[5]

On September 29, 2004, plaintiff applied for disability benefits and supplemental security

income, alleging onset of disability beginning August 1, 2003;[6] both applications were denied

initially.[7] Plaintiff requested and received an administrative hearing, which was conducted on

July 18, 2006.[8] On October 18, 2006, the ALJ ruled against the plaintiff, finding him not

"disabled" within the meaning of the Act.[9] The Appeals Council denied further review on

November 19, 2007.[10] Plaintiff then filed this appeal in the United States District Court for the

---

[3]*See* Mobile Infirmary Voluntary Psychiatric Admission dated February 21, 2001 [Adm. Rec. 136]; ALJ Clay E. Maggard's Hearing Decision dated August 18, 2006 (finding "severe" impairments of Schizophrenia-paranoid type with history of hallucinations, Personality Disorder-NOS and a history of alcohol abuse) [Adm. Rec. 25]; Transcript of Administrative Hearing [Adm. Rec. 207-209].

[4] Transcript of Administrative Hearing (Plaintiff testified that he had been prescribed two medications (Seroquel and Geodon) by Dr. Barry Amyx) [Adm. Rec. 206, 209-210].

[5]*See* Transcript of Administrative Hearing [Adm. Rec. 216-217].

[6]*See* Application for Disability Insurance Benefits [Adm. Rec. 68]; Application for Supplemental Security Income [Adm. Rec. 101].

[7]*See* Disability Determination and Transmittals dated 1/12/05 [Adm. Rec. 42, 193].

[8]*See* Transcript of Administrative Hearing [Adm. Rec. 200-221].

[9]ALJ Glay E. Maggard's Hearing Decision [Adm. Rec. 23-31].

[10]*See* Notice of Appeals Council Action dated November 19, 2007 [Adm. Rec. 4].

Eastern District of Louisiana.[11]

## II. STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991).   If the Commissioner's findings are supported by substantial evidence they must be affirmed.  *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002).   It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.  *See Boyd v. Apfel*, 239 F.3d  698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence or substitute its own judgment for that of the Commissioner.  *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 113, 112 S.Ct.

---

[11]*See* Complaint (Fed. Rec. Doc. #10).

3

1046, 117 L.Ed.2d 239 (1992).   Conflicts in the evidence are for the Commissioner to resolve, not the courts.  *Carey,* 230 F.3d at 135.  Any of the Commissioner's  findings of fact which are supported by substantial evidence are conclusive.  *Ripley*, 67 F.3d at 555.

Despite this limited function, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.  *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992);  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).   A claimant, such as the plaintiff, is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but cannot, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists or whether he would be hired if he applied for work.  42 U.S.C. § 1382(a)(3)(B).

### III. ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, Plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.   20 C.F.R. §§ 404.1501 to 404.1599 and Appendices, §§ 416.901 to 416.988 (1995).   The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.   *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232,

236 (5th Cir.1994).

The five-step procedure for making a disability determination under the Social Security Act was restated in *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001):

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 239 F.3d at 594 ( *quoting Crowley v. Apfel*, 197 F.3d 194 (5th Cir.1999)).

The four elements of proof weighed in determining whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflict in the evidence." *Id*.

### IV. ADMINISTRATIVE EVIDENTIARY RECORD

Given the substantial evidence standard of proof, a court's review of an administrative decision is necessarily fact-intensive. At the administrative hearing, two individuals testified:

the Plaintiff (Herbert O. Case, Jr.) and the vocational expert (Doug Miller).[12]  All formal medical evidence was documentary in nature – *i.e.*, no medical experts testified at the administrative hearing.  Plaintiff has not worked since approximately July of 2003.[13]  His present claim of disability is premised on the effects of his mental disorder (Schizophrenia) and his prescription medications.  At the hearing, Plaintiff testified regarding the following symptoms and conditions: auditory hallucinations and excessive daytime sleep caused by medications.[14]  Plaintiff denied any use of alcohol within the six month period prior to the hearing.[15]

In support of his disability claim, Plaintiff principally relies on a conclusory, non-narrative mental RFC assessment executed by his treating psychiatrist, Dr. Barry Amyx.[16]  The ALJ states that, on April 1, 2005, Dr. Amyx executed a Mental Residual Functional Capacity Questionnaire (Exhibit 6F) and opined that the Case had marked restriction of daily living, extreme estimated degree of difficulty maintaining social functioning, frequent estimated deficiencies of concentration, persistence and pace, extreme limitations as to his ability to understand instructions, respond appropriately to work pressures and marked limitation in his

––––––––––––––––––

[12]Adm. Rec. 200.

[13]Adm. Rec. 205.

[14]Adm. Rec. 205-210, 215.

[15]Adm. Rec. 208-209.  It is undisputed that alcohol abuse is not a contributing factor material to plaintiff's functional restrictions and limitations. West Mobile Outpatient Records April 1, 2005 (No ETOH at all)[Adm. Rec. 168]; *See* PRTF dated 12/08/04 (noting *history* of alcohol abuse) [Adm. Rec. 152]; Transcript of Hearing [Adm. Rec. 213-214].

[16]*See* Mental Residual Functional Capacity Questionnaire dated April 1, 2005 [Adm. Rec. 164-165].

ability to perform simple tasks, *inter alia*.[17]  The ALJ noted that the Dr. Amyx failed to indicate the earliest date to which the limitations in the questionnaire applied, indicated that a psychological evaluation had not been performed and opined that the side effects of his medications were sedation and weight gain.  In addition to having diagnosed Paranoid Schizophrenia, the ALJ noted that Dr. Amyx assigned the plaintiff a Global Assessment of Functioning (GAF) score of 45 for the current and past year, which score is indicative of an individual who is experiencing serious symptoms, such as suicidal ideation, severe obsessive rituals or any serious impairment in social, occupational or school functioning.

The ALJ refused to assign Dr. Amyx's opinion any weight because "the non-narrative assessment is contradicted by his own treatment records, the claimant's statements and the record as a whole."[18]  The ALJ further explained that treatment records from Mobile Mental Health indicated that Case had a higher GAF score of 60, indicating only moderate limitations at most, *prior to commencing treatment with Dr. Amyx*.  Indeed, Dr. Amyx's assessment suggests that, after a year of treatment, Case's mental condition deteriorated.  Nevertheless, his own treatment records indicate that plaintiff's mental condition improved with treatment.  More specifically treatment notes indicate normal behavior, normal mood, appropriate affect, good sleep, unimpaired memory, logical and coherent thoughts and no noted impairment as to concentration and perceptions.  The ALJ further cited treatment notes indicating that the plaintiff did not have suicidal or homicidal thoughts or self injurious behavior.  Indeed, treatment records dated April 1, 2005 (the same day as the mental RFC assessment) and August 18, 2005 (four

---

[17]Adm. Rec. 29.

[18]Hearing Decision [Adm. Rec. 30].

months thereafter), do not reflect that plaintiff experienced any exacerbations of signs or symptoms.[19]  The ALJ further observed that, during his course of treatment by Dr. Amyx, there were no hospitalizations and no emergency treatment of the plaintiff.  Indeed, Mobile Mental Health records reveal that the plaintiff's  medications remained the same throughout the course of therapy and his symptoms were well-controlled with medication.

Turning to the plaintiff's hearing testimony, the ALJ found plaintiff's own statement significant – *i.e.*, that his medication eliminated the auditory hallucinations he had previously experienced.

Essentially, the ALJ found that Dr. Amyx's conclusory assessment of mental RFC (disability) was neither dispositive nor entitled to any special significance.  *See* 20 C.F.R. §§ 404.1527(e)(1)-(3), 416.927(e)(1)-(3).   The ALJ concluded that Dr. Amyx's treatment and evaluative records are, at best, unsupportive of his conclusions as to marked or severe limitations of mental functioning.  Most notably, treatment records and progress notes of Mobile Mental Health (where Dr. Amyx treated the plaintiff) outright contradict his non-narrative assessment.

For instance, Dr. Amyx's assessment on the Mental Residual Functional Questionnaire suggests that Plaintiff's mental health condition had deteriorated, in that he assigned a GAF score of 45 after a year of treatment.[20]   Mobile Mental Health records dated February 5, 2004

---

[19]*Compare* Dr. Amyx April 1, 2005 Mental RFC Questionnaire (indicating *4 or more* episodes of decompensation in a work or worklike setting or exacerbation of signs and symptoms which may include deterioration of adaptive behavior*)* [Adm. Rec. 164].

[20]*See* Mental Residual Functional Capacity Questionnaire dated April 1, 2005 [Adm. Rec. 164-165];The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." *Diagnostic and Statistical Manual of Mental Disorders*, 32 (Text Revision 4th ed. 2000) ("DSM-IV-TR").  A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school

indicate that Case had a "current GAF Score of 60" *at the commencement of treatment.*[21]

Mobile Mental Health records dated March 9, 2004 do reflect plaintiff's complaints of auditory hallucinations. However, treatment records further report that Case had been "off of his medications for 2 years," "medication eliminates the voices," and that he was "looking for employment."[22] Additionally, Mobile Mental Health records indicate that Case is unemployed but receives unemployment compensation of $200.00 per week and lives with friends.[23]

Treatment records dated June 4, 2004 report that Case was alcohol free for a period of a few months. There was no indication of self-injurious behavior and no suicidal or homicidal thoughts. Plaintiff was advised to take his Seroquel in the morning to address his trouble sleeping.[24] On September 10, 2004, West Mobile Mental Health outpatient service records note that plaintiff appeared "calm" and "cooperative." He reported that he was "doing OK" and that his prescription medications seemed to be helping. [25]

Records dated November 9, 2004 similarly indicate that Case was "OK" and that there were no hospitalizations or emergency room visits. No changes were ordered with respect to

---

functioning," as inability to keep a job. *Id.* at 34.

[21]Mobile Mental Health Psycho-social History and Assessment dated February 5, 2004 [Adm. Rec. 186]. A GAF score between 51 and 60 indicates "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational or school functioning (e.g. few friends, conflicts with peers or co-workers)." DSM-IV at 34.

[22]Mobile Mental Health Records dated March 9, 2004 [Adm. Rec. 176].

[23]Adm. Rec. 184, 185.

[24]Adm. Rec. 174.

[25]Adm. Rec. 172.

prescription drug therapy (which appeared to be working well).[26]  His individual therapy record

includes the following notations, to wit: (1) behavior - normal and cooperative; (2) mood -

normal; (3) affect - appropriate to the situation; (4) speech - no impairment noted; (5) appetite -

good; (6) sleep - good; (7) no self-injurious behavior; (8) no suicidal thought; (9) no homicidal

thoughts; (10) perceptions - within normal limits; (11) memory - unimpaired; (12) thoughts -

logical, coherent and within normal limits; and (13) concentration - no impairment noted.

Progress notes further reflect that the plaintiff reported that he had difficulty concentrating while

working but that he enjoys fishing.[27]

Treatment records dated April 1, 2005 report that plaintiff was not abusing alcohol at all

("no ETOH at all") and that he was doing "OK."  Specifically noted by hand were "no

hospitalizations" and "no emergency" treatment.  Prescriptions were written for his medications,

which remained unchanged.[28]

Mobile Mental Health records dated August 18, 2005 indicate that Case presented

primarily for his medication refills (Seroquel and Geodon), which he did not want changed.   He

appeared "calm, clean, and cooperative," with "psychosis controlled."  The August 18, 2005

assessment of his mood, affect and thought, *inter alia*, was completely normal.   *"No

impairment"* in concentration was noted and his insight was described as "sophisticated."[29]

March 6, 2006 treatment records again reflect a completely *normal* assessment, including

---

[26]Adm. Rec. 171.

[27]Adm. Rec. 170.

[28]Adm. Rec. 168.

[29]Adm. Rec. 166.

unimpaired memory, no impairment in concentration, logical/coherent thoughts and affect appropriate to the situation. As before, Case appeared calm, clean, cooperative and in no apparent distress.[30] As the ALJ noted, treatment records reflect plaintiff's medications remained unchanged throughout his course of therapy and his symptoms were well-controlled upon his compliance with prescription drug therapy.

In stark contrast to plaintiff's treatment records discussed above, the April 1, 2005 Mental RFC assessment executed by Dr. Amyx uniformly reports marked and extreme handicap with respect to every ability and in every area of functioning as well as a GAF score of 45. The aforesaid non-narrative assessment reports that it was made with_out_ first obtaining a psychological evaluation.[31] Dr. Amyx's conclusory assessment is at odds with Case's own mental health treatment records and completely ignores plaintiff's *initial or baseline GAF score of 60* upon committing to the course of treatment in February of 2004 – *i.e.*, after two years of noncompliance with prescription drug therapy and, instead, self-medicating with alcohol.[32]

The ALJ assigned significant weight to the January 12, 2005 Mental RFC Assessment performed by the State Agency's non-examining psychologist, Patricia Hinton, Ph.D. She opined that Case was only moderately limited and that he was capable of understanding and remembering simple instructions and sustaining concentration as to same.

In addition to the medical evidence, plaintiff's hearing testimony suggests he is capable of gainful employment and not suffering from either marked or extreme impairment of

---

[30]Mobile Mental Health Records, Dr. Amyx's office visit notes dated March 10, 2006 [Adm. Rec. 190].

[31]*See* Mental RFC at Item 15 [Adm. Rec. 165].

[32]Adm. Rec. 186-187.

functioning in any sphere due to any medically diagnosed mental disease.  In this regard, Case testified that he applied for unemployment compensation and received it for a period of six months.[33]  Additionally, plaintiff testified that his activities include household chores such as cleaning the dishes, "take out the trash" and "mow the lawn."[34]  Plaintiff also testified that he watched television approximately *five or six hours* a day.[35]  Case completed a background questionnaire on June 19, 2006 indicating that he is capable of performing the following activities, to wit: (1) walk - 10 to 12 blocks; (2) stand or walk an hour at a time; (3) lift - 10 pounds; and  (4) sit - *"no problem."*[36]

## V. ISSUE ON APPEAL

The sole issue on appeal is whether the ALJ properly evaluated the medical evidence or committed error by failing to accord significant or any weight to Dr. Amyx's non-narrative form assessment of disability.  Plaintiff argues that the ALJ erred by finding that the April 1, 2005 opinion by treating psychiatrist Dr. Amyx was not entitled to any weight due to the fact that it was allegedly not supported by the plaintiff's own mental health treatment records and inconsistent with the remainder of the record.  Plaintiff maintains that this finding is in direct violation of the standards announced in a Social Security Ruling (SSR) 96-2p, which states that if "a treating source medical opinion is not well supported ... or is inconsistent with the other

---

[33]Transcript of the July 18, 2006 Administrative Hearing [Adm. Rec. 204].

[34]Adm. Rec. 214.

[35]*Id.*; *see also* Background Questionnaire executed June 19, 2006 (wherein plaintiff noted that he is able to mow grass, wash dishes, mop and vacuum floors, shop for groceries and watch television) [Adm. Rec. 134].

[36]*See id.*

12

substantial evidence in the case record" it "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." SSR 96-2p. Moreover, Plaintiff argues that in order to discount the treating physician's opinions, an ALJ must account for the factors set forth in 20 C.F.R. § 404.1527(d)(2). Plaintiff argues that the ALJ failed to do so and substituted his own judgment for that of his treating psychiatrist.

The defendant asserts that Fifth Circuit case law allows an ALJ to assign no weight to a treating physician's opinion for good cause, and that assertions by medical experts that a claimant is disabled are, in general, irrelevant to determinations of disability status under the Social Security regulations. *See Newton v. Apfel*, 209 F.3d 448 (5th Cir.2000) and *Frank v. Barnhart*, 326 F.3d 618 (5th Cir.2003) (*per curiam*). The Commissioner insists that the aforementioned case law is consistent with the text of SSR 96-2p. Additionally, the defendant maintains that the factors enumerated in the Code of Federal Regulations were discussed in the ALJ's opinion, albeit in narrative fashion.

## VI. ANALYSIS

The law in this area is somewhat involved. All medical opinions are to be considered in determining the disability status of a benefits claimant. 20 C.F.R. §§ 404.1527(b), 416.927(b). Nonetheless, opinions on ultimate issues, such as disability status under the regulations are reserved exclusively to the ALJ. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Statements by medical sources to the effect that a claimant is "disabled" are not dispositive, but an ALJ must consider all *medical* findings and evidence that support such statements. *Id*.

The regulations break medical source opinions down into three general categories: nonexamining, nontreating, and treating. 20 C.F.R. §§ 404.1502, 416.902. Nonexamining

sources are those whose assessments are premised solely on a review of medical records. *Id.*
State agency medical consultants consulted by the ALJ fall into this category. *Id.* Nontreating
sources are those who have examined the claimant, but who do not have "an ongoing treatment
relationship" with same. *Id.* This "term includes an acceptable medical source who is a
consultative examiner ... when the consultative examiner is not [a claimant's] treating source."
*Id.* Finally, medical sources who have had an "ongoing treatment relationship" with the claimant
are regarded as treating sources. *Id.*

In *Newton v. Apfel*, the court of appeals reviewed a decision in which an ALJ effectively
gave a treating physician's assessment "no weight." *Newton*, 209 F.3d at 455. The ALJ had
reasoned that the treating physician's opinion was "insufficiently substantiated by clinical or
diagnostic evidence" and that said physician's own assessments were contradictory. *Id.*
Construing 20 C.F.R. § 404.1527(d), SSR 96-2p, and SSR 96-5p, the court reversed and
remanded. *Id.* at 455-58.

The *regulations* at issue in *Newton*, *supra*, also lie at the heart of the present dispute.
These regulations generally require ALJs to "give more weight to opinions from... treating
sources" on account of their comparatively greater familiarity with a claimant's medical
conditions. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Indeed, when "a treating source's
opinion on ... the nature and severity of [a claimant's] impairment(s) is well-supported by
medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with
the other substantial evidence in [one's] case record, [the ALJ] will give it controlling weight."
*Id.* That is, the opinion "must be adopted." SSR 96-2p. But only opinions regarding the nature
and severity of impairments are entitled to such weight. *Id.*

Even if not given controlling weight, a treating source's medical opinions should not necessarily be disregarded.  *See id.*  Instead, when not accorded controlling weight, treating sources' medical opinions are to be assessed in light of multiple factors. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). These factors include the (a) duration of the treatment relationship and frequency of examination, (b) "[n]ature and extent of the treatment relationship," © supportability of the source's opinions in light of the relevant medical evidence and reasoning, (d) consistency of proffered opinions with the remainder of the record, (e) expertise of the medical source, and (f) any other relevant factors.  20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).  The regulations at least imply that these factors will be canvassed in administrative decisions when relevant by concluding the section that imposes these requirements with the advisory language that "we will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  20 C.F.R. §§ 404.1527(d), 416.927(d).  Another section specifies that, when ALJs fail to accord controlling weight to treating sources, the weight ascribed to the various treating, nontreating, and nonexamining sources must all be explained.  20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii); *see also* SSR 96-2p at *5; SSR 96-5p at *6.

Notwithstanding the language of the aforesaid provisions, an "'ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion,'" including the opinions of treating physicians.  *Newton*, 209 F.3d at 455 (*quoting Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir.1999)).  However, when the opinions of treating physicians are "assigned little or no weight," an ALJ's determination must be predicated on "good cause."  *Id.* at 455-56.  Good cause exists when a treating source's opinion is conclusory, unsupported by medically acceptable

evidence, or is otherwise bereft of substantial support. *Id.* at 456. Under certain circumstances, like those faced in *Newton*, good cause must be demonstrated in writing by an ALJ via consideration of each of the factors enumerated in 20 C.F.R. §§ 404.1527(d), 416.927(d).

In the instant case, the ALJ did not explicitly and specifically *enumerate* the factors set forth in 20 C.F.R. §§ 404.1527(d), 416.927(d) with reference to Dr. Amyx's Mental RFC assessment. *See* October 8, 2006 Decision [Adm. Rec. 28-30]. Such explicit consideration would certainly be the better practice. However, the ALJ did discuss all of the relevant factors in narrative form. Regarding the supportability of Amyx's opinions in light of the relevant medical evidence and reasoning, the consistency of Amyx's opinions with the remainder of the record and Amyx's expertise, the ALJ explained:

> The undersigned notes that the claimant has gone for considerable periods of time during the alleged period of disability considered herein without any treatment for his allegedly disabling mental impairments. Although the claimant has alleged a disability onset date of August 1, 2003, treatment notes do not reflect that the claimant sought or received treatment for any of his medically determinable impairments until almost five months after he has alleged disability, *i.e.*, January 30, 2004 (Exhibit 7F at 22). In addition, once he started treatment, his treatment was very conservative with scheduled appointments every two to three months. The claimant indicated that he does not receive much counseling from Dr. Amyx other than to take his medications. The record reflects that the claimant has not been consistently compliant with keeping his scheduled appointments. The record reflects at least three occasions where he went for six months without treatment, *i.e.*, from November of 2004 through April of 2005 (Exhibit 7F at 2, 3) and for seven months, from August 18, 2005 through March 10, 2006 (Exhibit 8F at 1)(Exhibit 7F at 1), without any treatment from March 10, 2006 (Exhibit 8F) through the date of the hearing without any treatment. In summary, the record reflects that the claimant participated in treatment for just half of the time during the alleged period of disability.... When he did participate in treatment, his treatment was conservative, with little counseling, prescribed medications and sessions every eight to twelve weeks. During almost three years of alleged disability considered herein, he participated in treatment with his treating physician, Dr. Barry Amyx, on just seven occasions (Exhibit 7F) (Exhibit 8F).

* * *

16

Ordinarily the undersigned would assign significant weight to the opinion of a treating physician; however, the undersigned does not assign Dr. Amyx's opinion [on disability] any weight because it is simply not supported by the *medical* treatment records, the claimant's testimony or the record as a whole. The undersigned finds significant the fact that treatment records from Mobile Mental Health, as summarized above, indicated that the claimant had a higher GAF score of 60, indicating moderate limitations at most, prior to his starting treatment than assessed by Dr. Amyx after a year of treatment. Despite Dr. Amyx assessment which would suggest a deterioration of the claimant's mental condition with treatment, treatment records consistently indicated that claimant had "normal behavior," a "normal" mood, affect which was "appropriate to the situation," "good" sleep, "unimpaired" memory, "logical/coherent/WNL" thoughts, "no impairment noted" as to concentration and perceptions "WNL." Treatment records also consistently indicated that the claimant did not have suicidal or homicidal thoughts, or self-injurious behavior. In fact, treatment records dated April 1, 2005 and August 18, 2005, on the day as, and four months after, Dr. Amyx's form assessment, did not reflect that the claimant had experienced any exacerbations of any signs or symptoms. The record reflected that during Dr. Amyx's course of treatment of the claimant, he did not require any emergency treatment or hospitalizations, his medications remained unchanged and his symptoms were well-controlled with medication. Perhaps the most significant is the testimony of the claimant himself who indicated that if he took his medication the voices that he heard were "pretty much eliminated." This would suggest that treatment had lessened the claimant's signs and symptoms. The undersigned also finds significant the claimant's statements that Dr. Amyx essentially limited counseling to advising him to take his medications. In summary, the undersigned finds that Dr. Amyx's non-narrative assessment is contradicted by his own treatment record, the claimant's own statements and the record as a whole.[37]

It is clear from the foregoing that the ALJ's narrative discussion also addresses the duration of Amyx's treatment relationship with the claimant, the frequency of Amyx's examinations, and the nature and extent of Amyx's treatment relationship with the claimant. Therefore, it does <u>not</u> appear that the instant case falls within *Newton 's* ambit.

More recently, the Fifth Circuit characterized *Newton* as merely "requiring, in the absence of competing first-hand medical evidence, that the ALJ consider each of the §

---

[37]*See* ALJ Maggard's Hearing Decision dated October 18, 2006 [Adm. Rec. 28-30].

404.1527(d) factors in evaluating the medical opinion of a treating physician." *Frank*, 326 F.3d at 620 (emphasis added). The ALJ clearly did so in this case and did not summarily reject the opinion of the treating source. Further, the ALJ summarized the entire medical record. [Adm. Rec. 28-30]. Dr. Amyx is plaintiff's treating physician/psychiatrist, but his conclusory, unsupported statement as to "disability" is not a *medical* opinion and is therefore not entitled to any deference. *Frank*, 326 F.3d at 620.

If the administrative record, as here, contains an opinion from a medical source (Dr. Amyx), on an issue reserved to the Commissioner [ i.e., Plaintiff's disability status], the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record. SSR 96-5p at *3. The ALJ undertook such an analysis and determined that Dr. Hinton's assessment (not Dr.Amyx's) was consistent with the treatment records, the statements of the claimant and the record as whole. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton*, 209 F.3d at 452 (internal quotations omitted). The court's role is to scrutinize the entire record to ascertain whether substantial evidence supports the Commissioner's findings. Such review reveals that the ALJ has reasonably resolved all such conflicts and that the record more than adequately bears out his conclusions.

Although an ALJ must provide "good reasons" regarding the weight given to a treating source's opinion, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), an ALJ does not have an obligation to exhaustively discuss the record in his decision. In this case, the ALJ provided a sufficient explanation. Indeed, the ALJ's decision highlights the fact that Dr. Amyx's conclusory, non-narrative mental RFC assessment issued without even conducting a

psychological evaluation of the plaintiff.[38]

The ALJ provided "good cause" for rejecting the treating physician's assessment and considered the factors set forth in the regulations. The ALJ's decision amply demonstrates that the psychiatrist's conclusions were not supported by medical evidence and were not consistent with prior examinations by treating physicians at Mobile Mental Health (including his own) or the plaintiff's own statements. Unlike *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001), where the court reversed the ALJ's decision for failing to consider the factors set forth in the regulations, the ALJ in this case noted the length of treatment by the physician, provided specific examples of lack of supportability, and provided details of other treating physicians at Mobile Mental Health and prior treatment records in order to demonstrate the inconsistency on the part of Dr. Amyx. The ALJ provided "good cause" for rejecting the treating psychiatrist's determination on the issue of "disability."

ALJ's are not bound by any findings made by State agency medical or psychological consultants but must consider such findings as opinion evidence. 20 C.F.R. §§ 404.1527(f)(2)(I), 416.927(f)(2)(I). In instances in which the treating physician's opinion is not accorded controlling weight, an ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant ... as the administrative law judge must do for any opinions from treating sources." 20 C.F.R. §§ 404.1527(f)(2)(ii),

---

[38]*See* Hearing Decision (noting that Dr. Amyx completely failed to explain the basis of any his ratings (which were all greater than moderate) *as required* in sub-part 12 of the questionnaire) [Adm. Rec. 28-30]. Additionally, Dr. Amyx's Mental RFC assessment is incomplete *in significant part* being unexplained at sub-part (12), blank at sub-part (14) regarding the earliest date of the symptoms and limitations and also blank, bereft of any explanation or comments at subpart (19). *See* Dr. Amyx April 1, 2005 Mental RFC Questionnaire [Adm. Rec. 165].

416.927(f)(2)(ii).  The ALJ did so in this case with respect to Dr. Hinton's opinion.

In this case, it is undisputed that plaintiff's only psychiatric hospitalization occurred in 2002 (well before the alleged date of onset), when he was being treated by Dr. Gomez.[39]   Dr. Gomez referred Case to West Mobile Mental Health with active acute alcohol abuse for the purposes of an assessment for Paranoid Schizophrenia and treatment.[40]  *Case has no other health problems.*[41]

Given plaintiff's disavowal of alcohol usage which is reflected in Mobile Mental Health treatment records over the course of his therapy and auditory hallucinations which were admittedly eliminated upon compliance with prescription drug therapy, the psychiatric diagnoses of Paranoid Schizophrenia and Personality Disorder NOS do not support a finding of zero residual functional capacity.  Indeed, the ALJ correctly determined that Mobile Mental Health treatment records contradict Amyx's April 1, 2005 Mental RFC assessment.

On January 12, 2005, State Agency Psychologist, Patricia Hinton, Ph.D., completed a Psychiatric Review Technique Form (PRTF).  She concluded that the plaintiff had only mild limitations in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace and insufficient

---

[39]*See* Mobile Mental Health's Routine Admission Assessment dated January 30, 2004 (noting active substance abuse, no history of suicide attempts, no psychosis or severe mood disorder and that patient has been on a drinking binge for the past year to self-medicate and that his prior prescription drug therapy (Seroquel) also stopped the voices and helped him sleep) [Adm. Rec. 187].

[40]Adm. Rec. 187.

[41]*See* Psychiatric Evaluation dated March 9, 2004 [Adm. Rec. 177]; *accord*  Transcript of Hearing (reaffirming that he has "no physical problems") [Adm. Rec. 215].

episodes of decompensation.[42]  Dr. Hinton reviewed Case's treatment records from Mobile

Mental Health Unit which (like Dr. Gomez's records) indicate that, when compliant with

prescription drug therapy, plaintiff does very well, his symptoms are controlled and he can

function adequately.[43]  Dr. Hinton concluded that plaintiff was able to understand and remember

simple instructions and capable of sustaining concentration while performing same.  She further

noted that Case's interaction with the public should be casual and infrequent, and that he will

benefit from assistance in setting realistic goals and that making plans independently of others

should be minimal.[44]

This Court's examination of the record reveals that substantial evidence supports the

ALJ's decision.  The alleged procedural error – *i.e.*, the failure to accord significant weight to a

treating specialist's conclusory, non-narrative assessment –  does not deprive the ALJ's ruling of

substantial support.  In this case, the ALJ identified good cause to reject same based primarily on

Dr. Amyx's own treatment records and progress notes from the mental health clinic where Dr.

Amyx treated the plaintiff.   This medical evidence does not support Dr. Amyx's restrictive

assessment of plaintiff's mental RFC.

## VII.  CONCLUSION

Plaintiff has failed to show that the ALJ failed to follow the regulations.  Moreover,

substantial evidence supports the ALJ's finding that plaintiff was not disabled within the

meaning of the Social Security Act at any time through the date of the determination.

---

[42]*See* PRTF dated January 12, 2005 [Adm. Rec. 154].

[43]*See* PRTF at Consultant's Notes [Adm. Rec. 156]; *See* Progress Notes dated March 19, 2002 (stating "back on Seroquel he's doing very well") [Adm. Rec. 139].

[44]*See* Functional Capacity Assessment Summary of Conclusions [Adm. Rec. 160].

Accordingly,

**IT IS RECOMMENDED** that the plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's Cross-Motion be GRANTED and that plaintiff's complaint be dismissed with prejudice.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b) A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this <u>3rd</u> day of March, 2009.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**