UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HERBERT O. CASE, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO.: 08-668** |
| **MICHAEL J. ASTRUE, COMMISSIONER SOCIAL SECURITY ADMINISTRATION** | **SECTION "S" (3)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Commissioner's Motion for Summary Judgment is **DENIED**, the Plaintiff's Motion for Summary Judgment is **GRANTED.** (Documents # 13 and #16).

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **REVERSED,** and the case is **REMANDED** for further consideration.

### I. BACKGROUND

On September 29, 2004, Herbert O. Case, Jr. filed an application for a period of disability, disability insurance benefits, and an application for supplemental security income. Case alleged that he was disabled as of August 1, 2003. The claims were denied, and Case requested a hearing before an administrative law judge. After the hearing, the administrative law judge concluded that Case was not under a disability within the meaning of the Social Security Act from August 1, 2003 through the date of the decision.

The administrative law judge applied the five-step sequential evaluation to determine whether an individual is disabled. The administrative law judge found that Case has not engaged in substantial gainful activity since August 1, 2003 (step one); he has the following severe

1

impairments: schizophrenia-paranoid type with history of hallucinations, personality disorder, and a history of alcohol abuse (step two); as a result of the severe impairments, Case has a "mild degree of limitation as to restriction of activities of daily living, a moderate degree of imitation as to difficulties in maintaining social functioning, a moderate degree of difficulty as to maintaining concentration, persistence and pace, and has exhibited no episodes of decompensation;" Case's "medically determinable impairments have not caused him to experience the requisite signs or symptoms required to meet Part A, Part B or Part C of any of the" listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.03 (step three); the Global Assessment of Functioning score of 60, as determined by Mobile Mental Health Services,[1] indicates "an individual who is experiencing or has experienced moderate difficulties or moderate limitations; Case has the residual functional capacity to perform unskilled work at all exertional levels with the limitation of "no driving"; and Case was capable of performing past relevant work as a shipyard laborer, but not a forklift operator (step four), or some lesser level of work as an unskilled laborer (step five). The administrative law judge concluded that Case was not under a disability, as defined by the Social Security Act from August 1, 2003 through October 8, 2006.

The Appeals Council denied Case's request for review, and Case appealed the decision in federal court. The Commissioner of the Social Security Administration and Case filed cross motions for summary judgment. The magistrate judge recommended that Case's motion for summary judgment be denied and that the Commissioner's cross-motion be granted. Case filed objections to the magistrate judge's report and recommendation.

---

[1] Case's treating physician found a GAF score of 45.

## II. DISCUSSION

### A. Legal standard

The Commissioner's denial of social security benefits is reviewed "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). "If the Commissioner's findings are supported by substantial evidence, they must be affirmed." Id. "The court does not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commisioner's decision." Id.

### B. Opinion of treating physician

Case objects to the magistrate judge's finding that the administrative law judge adequately discussed all of the relevant factors set forth in 20 C.F.R. §§ 404.1527(d) and 927(d) and rejected the opinions of Case's treating physician with good cause. Case contends that the magistrate judge recognized that the administrative law judge did not enumerate the factors of § 404.1527(d) before rejecting, or giving little weight to, his treating physician's opinion, especially in the absence of a consultative medical examination that refutes or contradicts the treating physician.

The Social Security Regulations require consideration of the following factors in assessing the weight to be given to the opinion of a treating physician when the administrative law judge determines that it is not entitled to controlling weight:

    (1) the physician's length of treatment of the claimant,
    (2) the physician's frequency of examination,
    (3) the nature and extent of the treatment relationship,
    (4) the support of the physician's opinion afforded by the medical evidence of

record,
(5) the consistency of the opinion with the record as a whole; and
(6) th specialization of the treating physician.

Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000). The regulation is construed in Social Security Ruling 96-2p, which states:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted even if it does not meet the test for controlling weight.

Id.

At the hearing before the administrative law judge on July 18, 2006, Case testified that he had been treated by Dr. A Barry Amyx at the Mobile Mental Health Center every ten weeks for a couple of years.[2] Dr. Amyx prescribed medication which "controls the voices," but causes drowsiness and inhibits Case's ability to work.

James Miller, the vocational expert, testified that Case had worked as a forklift operator, which is classified as medium, semi-skilled labor, and as a shipyard laborer, which is classified as heavy, unskilled labor. The administrative law judge posed two hypotheticals to the vocational expert. He first asked if Case could perform his past work if the vocational expert assumed that Case's testimony is credible as to his age, education, and past work, and that he has no physical impairments, but he has mental impairments. The vocational expert answered that

---

[2] Prior to his treatment at the Mobile Mental Health Center, Case was voluntarily admitted to Mobile Infirmary Medical Center for twelve days, and received psychiatric treatment from Dr. Gene Gomez.

4

he could perform work as a shipyard laborer, but ruled out any semi-skilled work. The administrative law judge then asked the vocational expert if Case could perform unskilled work if Case were limited to the extent set out by Dr. Amyx, and the vocational expert answered that he could not work.

The administrative law judge made the following findings:

On April 1, 2005, Dr. Barry Amyx, the claimant's treating physician, completed a Mental Residual Functional Capacity Questionnaire (Exhibit 6F). Dr. Amyx opined that the claimant had a marked estimated restriction of daily living; an extreme estimated degree of difficulty in maintaining social functioning; frequent estimated deficiencies of concentration, persistence and pace resulting in failure to complete tasks in a timely and appropriate manner; extreme limitations as to ability to understand, carry out and remember instructions; an extreme estimated limitation as to ability to respond appropriately to supervision; an extreme limitation as to ability to respond appropriately to co-workers; an extreme limitation as to ability to respond appropriately to customary work pressures; an extreme limitation as to ability to perform repetitive tasks; and extreme limitation as to ability to complete work-related activities in a normal workday or workweek and a marked limitation as to ability to perform simple tasks. He additionally opined that the claimant would experience four or more episodes of decompensation in work or work-like settings which would cause him to withdraw from that situation or to experience exacerbation of signs or symptoms. Dr. Amyx indicated that drug or alcohol abuse was not a contributing factor material to the functional restrictions and limitations. He failed to indicate the earliest date to which the limitations in the questionnaire applied. Dr. Amyx additionally indicated that a psychological evaluation had not been obtained. He opined that side effects from the claimant's prescribed medication included sedation and weight gain. Dr. Amyx indicated that the claimant had been diagnosed as having Paranoid Schizophrenia. He opined that the claimant had a Global Assessment of Functioning (GAF) score of 45 for the current and past year. A GAF score of 45 is indicative of an individual who has experienced or is experiencing serious symptoms . . or any serious impairment in social, occupational or school functioning.

Ordinarily the undersigned would assign significant weight to the opinion of a treating physician; however, the undersigned does not assign Dr. Amyx's opinion any weight because it is simply not supported by the medical treatment records, the claimant's testimony or the record as a whole. The undersigned finds significant the fact that treatment records from Mobile Mental Health, as summarized above, indicated that the claimant had a high GAF score fo 60,

5

indicating moderate limitations at most, prior to his starting treatment [and assessment] by Dr. Amyx after a year of treatment. Despite Dr. Amyx's assessment which would suggest a deterioration of the claimant's mental condition with treatment, treatment records consistently indicated that the claimant had "normal behavior," a "normal" mood, affect which was "appropriate to situation," "good" sleep, "unimpaired" memory, "logical/coherent/WNL" thoughts, "no impairment noted" as to concentration and perceptions "WNL.". . . Perhaps most significant is the testimony of the claimant himself who indicated that if he took his medication the voices that he heard were "pretty much eliminated." This would suggest the treatment had lessened the claimant's signs and symptoms. The undersigned also finds significant the claimant's statements that Dr. Amyx essentially limited his counseling to advising him to take his medications. In summary, the undersigned finds that Dr. Amyx's non-narrative assessment is contradicted by his own treatment record, the claimant's own statements and the record as a whole.

The undersigned assigns significant weight to the Mental Residual Functional Capacity assessment completed by Patricia Hinton, Ph.D., a psychiatrist,[3] on January 12, 2005 (Exhibit 5F). Dr. Hinton opined that the claimant was moderately limited as to the following: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to interact appropriately with the general public and the ability to set realistic goals or make plans independently of others. Dr. Hinton found that the claimant was not significantly limited in all other assessed areas. She opined that the claimant had the ability to understand and remember simple instructions and was capable of sustaining concentration while performing simple instructions. Finally, Dr. Hinton opined that the claimant's interaction with the public should be casual and infrequent and he would benefit from assistance in setting realistic goals and in making plans independently of others. The undersigned finds that Dr. Hinton's assessment is entitled to significant weight as it is well supported by the record as a whole. The record has consistently reflected that the claimant has had "unimpaired" memory, "logical/coherent/WNL" thoughts, "no impairment noted" as to concentration and perceptions "WNL." Prior to starting treatment, the claimant's GAF score indicated that he had moderate limitations or moderate difficulties with occupational, social or school functioning. The claimant has indicated that he has limited socialization and loses his concentration if he starts hearing voices. He has indicated; however, that the medication has virtually eliminated his hearing voices.

In summary, the undersigned finds that the claimant's symptoms are relatively

---

[3] The record does not support a finding that Dr. Hinton is a psychiatrist.

> well controlled if he follows his prescribed treatment regimen. The record
> reflects that his prescribed medications have not changed during his course of
> treatment at Mobile Mental Health. He has not required emergency treatment or
> hospitalizations. In addition, he has lived at the same residence for several years
> and appears capable of taking care of his personal needs and contributing to the
> performance of household chores. The undersigned finds significant the fact that
> despite lapses in following his prescribed treatment regimen the record reflects
> that the claimant has been relatively stable without exacerbations in his condition.
>
> . . . .
>
> The vocational expert, James Miller, testified that the claimant had past relevant
> work as a fork lift operator . . ., which was classified as medium and semi-skilled,
> shipyard laborer which was classified as heavy and unskilled and took sharpener .
> . . which was classified as medium and semi-skilled. Mr. Miller indicated that the
> claimant did not have any transferable skills from previous employment. He
> opined that based on the claimant's vocational profile as set forth herein for
> unskilled work with limitations as to no driving, the claimant would be able to
> perform his past relevant work as a shipyard laborer. Mr. Miller testified that
> there were 30 million such jobs in the national economy. In comparing the
> claimant's residual functional capacity with the physical and mental demands of
> this work, the undersigned finds that the claimant is able to perform it as actually
> and generally performed.
>
> The undersigned notes that other questions were posed to the vocational expert
> that were based on assumptions as to the validity of the claimant's testimony
> regarding symptoms found by the undersigned to be not fully credible and not
> supported by objective testing or the record as a whole. The undersigned
> therefore finds the vocational expert's response to same of no probative value to a
> disposition in this matter.

Administrative record at 29, 31.

This is not a case in which there are competing reports of a treating physician and an examining physician. In this case, the administrative law judge accorded significant weight to a non-treating, non-examining expert opinion of a psychologist, and did not assign any weight to the treating physician's assessment. It appears from the report that the administrative law judge mistakenly assumed that Dr. Hinton is a psychiatrist. However, nothing in the record indicates that Dr. Hinton is a medical doctor. Without examining Case personally, Dr. Hinton agreed that

7

Case was able to understand and remember "simple" instructions, but should have only casual and infrequent interaction with the public and make only minimal plans independently of others. Based on Dr. Hinton's assessment, the administrative law judge concluded that Case is stable in performing routine, daily tasks when following his prescribed treatment. However, there is no discussion regarding the effect that the medication has on Case's ability to sustain a job for a significant period of time. The administrative law judge must determine whether the side-effects of the treatment essential for him to control the debilitating effects of his mental illness preclude Case from engaging in gainful activity. See Newton v. Apfel, 209 F.3d at 459.

The most recent GAF score provided by the treating physician subsequent to Dr. Hinton's report indicates that Case's mental residual functional capacity has decreased. The administrative law judge has not provided good cause for declining to give any weight to the treating physician's assessment and relying solely on a non-treating, non-examining expert opinion of a psychologist, who is not a medical doctor.

Accordingly, the failure to assign "any weight" to the treating physician's assessment was improper, and the decision is not supported by substantial evidence. The decision of the Commissioner is reversed, and the case is remanded for rehearing, pursuant to the fourth sentence of § 405(g). See Dudley v. Astrue, 246 Fed. Appx. 249, 250 (5th Cir. 2007) ("The fourth sentence of § 405(g) authorizes a court to enter a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing.").

New Orleans, Louisiana, this __24th__ day of March, 2009.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**